## Case No. 15,115.

### UNITED STATES v. FIVE HUNDRED BARRELS OF WHISKY.

[2 Bond, 7.] [1]

District Court, S. D. Ohio. Feb. Term, 1866.

DISTRICT ATTORNEY—PERCENTAGE — COMPROMISE.

1. A district attorney of the United States is entitled to two per cent. on all moneys collected, or realized, in any proceeding under the revenue or internal revenue laws of the United States conducted by him.

2. While a proceeding in rem, to forfeit distilled spirits for non-compliance with the provisions of the internal revenue laws of the United States, was pending in the United States district court, the owners of said spirits effected a compromise of the case with the secretary of the treasury by the payment of a large sum of money, and accrued costs, the case being dismissed and the property released to the owners by order of the secretary. Upon motion of the district attorney, for a retaxation of costs in the case, to include a commission to himself of two per cent. upon the sum paid to the secretary of the treasury: *held*, that, under section 11 of the act of March 3, 1863 [12 Stat. 741], the district attorney was entitled to receive from the United States two per cent. upon the sum paid by the terms of the compromise for the release of the property seized in said proceeding, as well as upon the sum paid as penalties incurred upon said property.

At law.

R. M. Corwine, for the motion.
A. F. Perry, for the United States.

LEAVITT, District Judge. This case is now before the court on the application of R. M. Corwine, attorney for the United States in this district. for a retaxation of costs.

The facts necessary to be noticed, in deciding the question before the court, are, substantially, that in September, 1865, five hundred barrels of whisky were shipped from Nashville, Tennessee, by the firm of Stephens & Stone, distillers of spirits in that city, consigned to H. L. Styles & Co., of the city of Cincinnati. After the arrival of the whisky here, it was ascertained by an inspector that the barrels containing the whisky were not branded as required by the internal revenue law, and that there was reason to believe the whole amount of duties chargeable on the whisky had not been paid a Nashville, and that it had been shipped from that place in violation of law. and was therefore liable to forfeiture. The inspector made complaint

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

in due form, and the whisky was seized, and an information filed in this court praying for its condemnation. It is not necessary, in considering the question to notice all the intermediate proceedings in relation to the whisky thus seized. Notwithstanding the certificate of the collector of internal revenue at Nashville, to the effect that the duties had been fully paid by the manufacturers, and that they had not been guilty of any violation of the law in regard to the whisky, such facts were presented to the commissioner of internal revenue at Washington as to induce the suspicion that the manufacturers had practiced a fraud upon the government; and for the ascertainment of the facts in relation to their transactions, Mr. Spooner, the collector for the First congressional district, and Mr. Kimber, an inspector for the same district, were appointed special commissioners by the head of the bureau of internal revenue at Washington, with authority to proceed to Nashville, and institute a thorough investigation of the doings of the firm of Stephens & Stone in connection with their business as distillers, and report the result to the department at Washington. This duty was promptly discharged by those gentlemen, who reported, after full investigation, that said firm had failed to make a full and fair report of the quantity of whisky manufactured by them, and consequently had subjected themselves to heavy penalties, and the forfeiture of all spirits owned by them, as well as their entire manufacturing establishment at Nashville. By this report, it appears that Stephens & Stone were in default in the payment of duties chargeable on the whisky made by them to the large sum of $77,740, and were liable, under the statute, to the payment of $52,260 on penalties incurred by them; making in the aggregate upward of $130,000. Upon this development, these parties repaired to Washington, and effected a compromise with the secretary of the treasury by the payment of the said sum of $130,000; and an order was therefore made for the discontinuance of the proceedings in this court against the five hundred barrels of whisky, and for the restoration of the same to Styles & Co., on the payment of accrued costs. As one of the conditions of the compromise, it was provided that the percentage due to the district attorney by law, for his services in filing and prosecuting the information in this court, should be paid by the treasury department at Washington. An order was therefore made for the discontinuance of the proceedings in this court, and for the delivery of the five hundred barrels of liquor to the said Styles & Co. On the presentation of his claim by the district attorney to the secretary of the treasury, he doubted his authority to pay it, and referred the question to the attorney general for his opinion. That officer decided, in substance, that the question was one involving the legal taxation of costs; was judicial in its character, and to be decided by the

court in which the proceeding was brought. The secretary of the treasury thereupon declined to authorize the payment of the claim until there should be a judicial decision as to its legality. In this state of the case, the district attorney has very properly presented the question for the action of this court, on a motion to include his claim as an item in the taxation of costs. He claims, as legally taxable for his services in the case, two per cent. on $130,000, the sum paid into the treasury by Stephens & Stone under the compromise that has been referred to, amounting to $2,-600. This taxation is opposed by the learned counsel who has been retained by the collector for the First internal revenue district, probably with the sanction and approval of the secretary of the treasury. The first position in his argument is, that it is not in the competency of the court to reform or amend the taxation of costs, after the dismissal of the information by order of the treasury department, and the payment of the costs taxed in the case by Stephens & Stone, according to the terms of the compromise. This point would be well taken, if the item now sought to be taxed. if allowed, would be chargeable to them. But, as they have fully complied with the conditions upon which the case was compromised, they are clearly not liable for any additional item in the taxation. It is now a question between the district attorney and the government. If the claim of the district attorney, in whole or in part, is allowed as a proper item of taxation, the government will be liable to pay it, and is willing to pay it, if it is adjudged to be legal. Indeed, it is within the spirit, if not within the letter, of the terms on which the secretary of the treasury ordered the dismissal of the information. And if the district attorney has not this remedy, there is no other course by which he can obtain compensation for his services.

In addition to the point suggested, the counsel resisting this taxation insists: (1) That there is no statutory provision under which compensation for the services of the district attorney can be included in the taxation of costs in this proceeding. (2) That if the district attorney's per centum is properly taxable, it can be estimated only on the proceeds of the whisky seized at Cincinnati, and within the jurisdiction of this court for adjudication, and not upon the whole amount paid into the treasury by Stephens & Stone, as due from them for unpaid duties and the penalties resulting from their violation of the law.

As to the first of the propositions, the court entertains no doubt that the district attorney is entitled to compensation in this case under section 11 of the act of March 3, 1863 (12 Stat. 741). That section provides that there shall be taxed and paid to district attorneys two per centum upon all moneys collected or realized in any suit or proceeding arising under the revenue laws, conducted by them, in which the United States is a party. The words of this section are plain and intelligible. It gives to the district attorney two per cent. on all moneys collected or realized in any proceeding under the revenue laws, conducted by him. The argument of the counsel is, that this provision was intended for, and must be limited to, revenue cases arising under that statute, and can not be held to embrace a case arising under the internal revenue laws. But the language of the section does not require this restriction. It includes not revenue cases arising under that statute alone, but all cases arising under the revenue laws; embracing as well such as arise under the internal revenue laws as those that relate to import duties. If congress had not so intended, there would have been words used requiring the restricted interpretation contended for. It is argued that the title and subject-matter of the act impose this restriction. It is entitled "An act to prevent and punish frauds upon the revenue, to provide for the more certain and speedy collection of claims in favor of the United States, and for other purposes." It is true the subject-matter of the act relates to external commerce, but the insertion of the words, in the title, for "other purposes," allows of provisions not immediately connected with that subject. And section 9 actually includes a subject wholly foreign to the general purpose of the act, namely, the renting of unproductive lands or other property of the United States acquired under judicial proceedings. I can not doubt, therefore, that section 11, before quoted, was intended to include, and from its phraseology does include, all cases arising under any revenue act, whether it relates to internal revenue or to duties upon imports. And this conclusion is fortified by the fact that the internal revenue laws contain, as I think, no provision for compensation to a district attorney, in the form of taxable costs, as a per centum on moneys collected or realized in proceedings to enforce forfeitures under those laws. And it would result, that if he can not tax the two per cent. authorized by section 11 of the act referred to, there is no provision of law for his compensation for services under the internal revenue laws, however laborious in themselves, or advantageous to the government.

As to the second point stated, namely, on what basis the percentage claimed shall be estimated, I concur with the views urged by the counsel resisting the taxation as claimed by the district attorney. The two per cent. to be taxed as his fees must be upon the moneys realized by the United States as the proceeds of the property seized by the process of this court, and within its jurisdiction. It is alleged by the district attorney, that the $130,000 paid by the Nashville distillers, for unpaid duties and penalties, was secured to the government by his vigilance and that of other government of-

ficials at Cincinnati, in seizing and retaining in the custody of the law the 500 barrels of whisky consigned to Styles & Co. And it is doubtless true, that the stupendous frauds practiced by Stephens & Stone would not have been developed except through the commendable zeal and vigilance of the district attorney and the revenue officials in this city. But I can not see that this fact affords any legal basis for a claim to a per centum by the district attorney on the gross sum paid by the Nashville firm for unpaid duties on spirits distilled, and the penalties resulting from their violations of law, at a place not within the jurisdiction of this court, and for which no decree of forfeiture could have been entered by this court. The jurisdiction of this court in this matter results from the accidental circumstance that a portion of the whisky manufactured was brought within the Southern district of Ohio, and here seized by legal process. Now, it is quite obvious that no per centum can be taxed to the district attorney except on the basis of the proceeds of the whisky seized, and for the condemnation of which the information was filed, and the penalties which, under the statute, attached to it. This will plainly appear from the consideration that if there had been no compromise between the government and the manufacturers, and the case had proceeded in this case to a decree of forfeiture, the district attorney's per centum could only have been taxed on the amount realized from the sale of the whisky. Although in this case there was no sale of the whisky, owing to the compromise made at Washington, and the consequent dismissal of the information filed in this court, yet as the amount claimed by the government was "realized," in the language of the statute, the district attorney is clearly entitled to two per cent. on the sum for which the 500 barrels would have sold in this market. And he is fairly entitled to his per centum on the proportion which the proceeds of the 500 barrels will bear to $52,260, being the sum paid by the Nashville firm to the government as the penalties incurred by them for violating the law. The government has "realized" the amount of penalties which attached to all the whisky manufactured, and I can not see any good reason why the district attorney may not claim a per centum on so much of the penalties as attaches to the 500 barrels proceeded against in this court. I shall direct the taxation to be made on the basis indicated. To make a specific taxation on this principle, the market value of the whisky must be ascertained, as also the proportion of the penalties which attached to the five hundred barrels under the terms of the compromise. And I would suggest the propriety of a reference of this matter to a competent person to ascertain the sum on which the two per cent. shall be estimated, unless counsel can agree upon the amount.